Ms. Brimmer. Good morning, Your Honor. My name is Jeannette Brimmer, and along with my co-counsel Stephanie Sosi, I am here on behalf of the Menominee Indian Tribe of Wisconsin. This case is about the Menominee Tribe's rights to invoke federal law and jurisdiction to protect the waters and landscape of its ancestral home, the birthplace of its people, the Menominee River. In today's argument, I would like to make three points. First, the Tribe's claim is a timely, as-applied challenge to the Corps and EPA's refusal to accept jurisdiction over the wetland permit for the Back Forty Mine on the Menominee River. Second, the National Historic Preservation Act requires the federal agencies to consult with the Menominee Tribe concerning historic and cultural resources because this permit meets the definition of objections to the proposed Section 404 wetland permit is reviewable under the Administrative Procedure Act. So turning to my first point, this case is an as-applied challenge to the decision to refuse federal permitting jurisdiction over this particular wetland permit. The Tribe asserts that the delegation of this permit to the State of Michigan violates the Clean Water Act because, as the Tribe asserts and provides evidence in the record, the Menominee River is used or susceptible to use in interstate commerce. And as such, this permit cannot be delegated under the Clean Water Act to a state. Can I ask you a question about the, just to sort out legally for a second, what you refer to, and I understand why, is an as-applied challenge. In your brief, the primary authority that you rely upon for a challenge like this to proceed, a kind of a project-specific challenge, if you will, in the face of what is an otherwise broad standing of permitting authority, is the D.C. Circuit's 1987 decision in NLRB versus the Fair Credit. And it's not clear to me how that case supports the kind of as-applied legal claim that you want to bring here in the face of the 1984 delegation. Can you walk me through that? Certainly, Your Honor. I think that, first, with respect to the NLRB case, that and a number of other cases that we have cited in the briefs concerning as-applied challenges, including cases from this Court, really address the general concept of as-applied. In other words, obviously, that case was not about a 404 permit. And it is, instead, what that case recognizes is the fact that you can have facial challenges to an agency rulemaking or actions such as here, the delegation to the state of Michigan, but often those claims are not ripe or can be challenged later when they are actually applied to the detriment of one of the parties. And in fact, that's even what the cases that the District Court relied on, in this case, to dismiss the claims say, that you can come in later and you can bring an as-applied challenge when the agency actually applies that regulation or that thing to one of the litigants, and that then affects the rights and the consequences to that litigant. And that's really what we're talking about here, there was a delegation to the state of Michigan, the 1984 Memorandum of Agreement is in the record, and that delegation was as to certain waters. Now, at that point in time, there wasn't a permit, there wasn't anything that was happening on the river near this location, but in fact, now the agency is applying that. The tribe in 2017 said, hey, there's this mining permit, there's this big mine, we have historic resources there, we have burial mounds, we have historic garden beds and dwelling sites, that's going to affect us. And we looked at this, and it looks to us like the Menominee River in that section is used in interstate commerce, and so this permit really should be administered by the Corps of Engineers. That is a classic as-applied challenge. No, I understand that, but what you have to do, don't you, is you have to have a legal authority that compels the agency to effectively revoke the 19, I don't mean wholesale, but effectively revoke the 1984 delegation for purposes of considering how it applies to this particular project. So my question is, what's the source of that legal authority? Thank you, Your Honor. Yes, that is 33 U.S.C. Section 1344G, that is the provision of the Clean Water Act that specifically says that a permitting program under 404, the wetland permitting program, can be delegated to a state, but it reserves back any waters that are used or are susceptible to use in their natural condition to use in interstate commerce. And it specifically says in that the Corps recognizes that. In the Memorandum of Agreement itself, it reserved part of the Menominee River. But in your view, does that provision require the Corps or the agency, on a project-by-project basis, to determine whether that jurisdictional threshold, you know, has been, or maybe that's not the right word, whether the precondition of the use of the waterway for interstate commerce has been triggered? Your Honor, I think that... Because I think, we'll see what they have to say, but my sense is they will say, well, sure, that was absolutely considered in 1984. But when projects kind of come up, you know, seriatim as they do, we don't have to revisit it every time. Well, Your Honor, I think that what we've got here, though, is a classic as-applied challenge where that was raised. In other words, we aren't talking here about whether the Corps, each and every time the state of Michigan issues a permit, whether it's for a water that may be subject to interstate commerce or clearly is not. The Corps, I'm not arguing, has an obligation to look at that each and every time. I don't think that issue is before the Court here. But the issue that is before the Court is you have the tribes specifically saying to the Corps, hey, look at this, there's evidence, and in fact, you have this evidence. The Corps' own consultant and attorneys before 1984 said, looks to us like the entire river is not subject to delegation. It is used in interstate commerce. So arguably there was an error at the time. But now when it is being applied per the tribe's specific request for the Corps to take jurisdiction, the Corps and EPA have clearly taken a final action and said, no, we delegated it. That's going to be good for all time. We are not taking this permit back. And I think that gives rise to the as-applied challenge here where the tribe should have its day in court for the Court to review this and determine whether or not that river, this permit on that river should be delegated. So the question coming at the question from a slightly different angle, I think I understand, I think, your argument under 1344G. Is that an argument that you can make to the Michigan courts in the review of the delegated permit? Well, Your Honor, I think that's an excellent question, and we will pursue that in the Michigan courts. We are representing the Menominee tribe in the state process because in order to protect their interests, we really are required to. I would note to the court, and we do cite this and provide this in our briefs, that the administrative law judge, which is the level at which we start right now, has plainly stated that he in the state of Michigan will not look to federal law. He does not want to hear this argument. He does not want to take up the argument. That may be a problem, and I understand the ALJ may not think that he has authority as a state ALJ to reconsider the delegation of his own jurisdiction. But I would think the Michigan courts could. You've got the supremacy clause on your side if you're correct on the merits. Yes. But frankly, what I'm worried about here is, is there a forum, a fair forum for the tribe to raise this issue? But second, is there a way to manage this process so that we don't multiply parallel channels of judicial review ad infinitum in this process where you challenge the EPA, you challenge the Corps, you challenge the state permit in Michigan, and that's just, I think, the dumping permit, right? And you've also got some other permits in Michigan that are subject to judicial review. How do we keep that under control? I appreciate that, Your Honor. I think that it is important that the tribe have this federal forum for a variety of reasons. So first and foremost, it's plain under the Clean Water Act that it really should be the Corps of Engineers. And if we get all the way into the process of actually challenging a state permit and going down that road, the tribe has actually lost ground because it should be with the Corps. Why is that particularly important? That affects the rights and interests of the tribes with respect to application of other federal laws that the tribe, normally having a government-to-government relationship with the federal government. But if you win in the Michigan courts on the 1344G jurisdictional problem, which I would think would present a federal question that could be even presented to the Supreme Court, that's a heck of a showstopper. I mean, that blows up the whole permit and says the mine company has to start back all over again with the Corps and the EPA. And I appreciate that, Your Honor. That may, in fact, be the route. But I think that that doesn't negate the fact that the federal law plainly applies and says that where you have a final agency action here by a federal agency, which we have, and that final agency action affects the rights and interests of the tribe, which it does, and there is a federal underpinning in the Clean Water Act for those claims, that the tribe gets its day in court in federal court. The Administrative Procedure Act plainly sets out the pathway. Now you're right, Your Honor. But your perspective then, to follow up on Judge Scudder's questioning, is that in the states when they're, the two states, I guess, where we have these 404B delegations, that that process is going to become completely unwieldy because anybody can challenge, can both litigate permits through the state processes and then bring these parallel challenges in federal court challenging the original delegations, right? Yes, Your Honor. And I appreciate the court's concerns that that sometimes makes some of these cases more complicated. And in fact, the tribe would prefer, obviously, that it not be that complicated, which is why the tribe raised this well before Michigan issued this permit. It doesn't just make it more complicated. It's an open door to parallel litigation in every permitting proceeding. Your Honor, I would argue that it is not parallel litigation in every permitting proceeding because, in fact, this is a pretty constrained situation where you would have a water body like this that is not delegated. So, for example, there are probably any number of water bodies within the state of Michigan that would not be subject to use in interstate commerce. And so there may be permits there where this wouldn't come up at all. This is a very discrete issue in this case. And I think that the Clean Water Act recognizes that sometimes you are going to have federal and state corresponding issues that arise because that's kind of the cooperative federalism situation that we have under the Clean Water Act. I believe that, yes, there may be instances where you may have litigation in both bodies. I don't think that is foreclosed by the statute, and I think that those situations would be limited. And I would invite and ask the court to consider the special circumstances here in waiting whether or not it is important to give the tribe a federal forum because you do have a tribe, that issue here, its own sovereign government that has government-to-government relations with the federal government, not with the state of Michigan. And, in fact, the state of Michigan has made very clear that it has no relationship with the Menominee Indian Tribe of Wisconsin. And yet we are talking about clear historic resources that are subject to protections. We have a river that, again, the tribe just wants its day in court to talk about whether this permit on this river should be delegated. And I think that the federal law would soundly support this court finding that it is appropriate under these circumstances for the tribe to be in federal court and to have its rights protected in this as-applied challenge. I would like to move to my second point, if I may, and that concerns the application of the National Historic Preservation Act here. And the tribe argues that the consultation obligations that arise under the act apply here regardless of who is the primary permitting authority. Section 106 of the National Historic Preservation Act set forth the obligation of federal agencies that have authority to license to consult on historic resources with the tribe. And in 1992, Congress amended the National Historic Preservation Act to provide additional protections for tribes. And as part of that process, Congress further detailed and defined what is an undertaking that is subject to consultation under the act. And in doing so, Congress specifically called out actions that have been delegated to a state that is part of the definition of an undertaking. Let's assume it's an undertaking. How does it qualify under the federal funding, federal licensing prong of that? Well, Your Honor, our opponents... I think that's the real focus. I think that our opponents, Your Honor, actually are too limited in their definition there. Under 106, if you read the language of Section 106 concerning when the consultation obligation arises, it arises, as you point out, Your Honor, for federally funded projects or federally assisted projects. It also arises for agencies that have the authority to license. In reading and arguing that the statute says that it is only when the agency itself is doing the licensing, that's what the court found below, and that is what our opponents argue, that is too narrowly reading the statute. Section 106, in fact, refers to the authority to license. And then when you read that, as you should with reading the statute as a whole, with the definition of undertaking, that includes specifically, and I will quote, projects that are subject to local or state regulation administered pursuant to delegation or approval by a federal agency. That clearly squarely applies here, and to therefore read the statute as requiring that the federal agency itself issue the license is too narrow. It ends up reading part of the statute entirely out of existence, which is not something we do under a canon of statutory construction, and it reads Section 106-2 limiting. With my remaining time, let me just briefly address the case law on that point, if I may, because, of course, there's been a lot of discussion about those D.C. Circuit cases. The two cases, the Fowler and Sheridan-Calarama cases, either don't discuss the issue here or did so in a manner inconsistent with the statute. Fowler did not engage in any analysis of the issue because it found itself bound by Sheridan-Calarama, so there's not really anything to grab onto with Fowler. In Sheridan-Calarama, we do not have a permit, much less a state delegated permit. Instead, we have the court really in dicta and a passing reference referring to this federally funded or federally licensed project. It did not grapple with the very specific issues that are in front of you here, so this court has an opportunity to really examine and analyze the whole of those statutory provisions, the intent of Congress, particularly in the 1992 amendments,  you have the actual delegated license that affects a tribe. So with that, if the court has no further questions, I'd like to reserve the remainder for rebuttal. Thank you. Thank you. Ms. Engel is your first. Good morning, and may it please the court. I'm Summer Engel. I'm here for the United States, and with me at council table are Ashley Kreisler and Dan Ettinger for Akela Resources. We ask the court to affirm. When Congress passed the Clean Water Act,    of clean water in the United States. to regulate water pollution and to ensure that water resources are protected. Here, the state of Michigan assumed permitting authority for discharges into wetlands, and as a result, the federal agencies' responsibilities were much more limited, and that's consistent with congressional intent. Here, the tribe requests and urges the court to require the agencies to take a more robust role, but that's simply not what Congress envisioned. As a result, the district court properly granted the defendant's motion to dismiss and denied the motion to amend as futile. I'd like to start with the motion to dismiss. The tribe asserts that it raises an as-applied challenge, but it misses the first step, which is that to have a proper as-applied challenge, there must first be a final agency action, and the letter challenges on appeal the core letter in response to the tribe's request for consultation and a jurisdictional determination satisfies neither element of the two-part Bennett test applicable to final agency actions. It's not a decision-making process that was consummated in the letter. Indeed, the court had no authority to engage in such a process. Ms. Engels, how do you think the tribe should obtain an authoritative resolution of the question about the scope of 1344G and the interstate commerce scope on the river? There is a way for the tribe to have it stay in court, and that's through a petition under the APA, that's Section 553E. It allows an interested party to seek or to have an agency reconsider a regulation, amend the regulation, and then, as a result, the agency's required under 5 U.S.C. 550E to provide an explanation for its decision to grant or deny a permit. So can they do that now? They could do that now. I'm unsure whether it would affect the scope of the permit process here. Can they challenge this in the Michigan state courts? I would be pleased to submit supplemental briefing on that. My initial answer is that I don't think the state courts have authority to reexamine the scope of Michigan's assumed authority if the question is whether the waterways in issue were properly part of their assumed authority. That's a question that the agencies, I'm sure, would like to take a role in discussing. I'm sure you would, but it also seems to me in this cooperative federalism that's being talked about as a recipe for a train wreck here, particularly if it becomes, or to shift metaphors, this winds up becoming a two-step where there's never any meaningful review of that question about the scope of interstate commerce on the Menominee River. I think the ideal scenario here is that the tribe petition upon learning that Aquila is planning to develop a mine here and ask the agencies at that time to consider the scope of the regulation setting forth the state's authority to issue Section 404 permits. How long does that process take? I'm unsure how long that takes. A year, two years, subject to judicial review in the federal courts? It could certainly take a while if it's subject to judicial review. Ms. Angles, how does this work in the ordinary course, just stepping back a bit, when the agencies see changed circumstances? So you look at a waterway in 84. There's no interstate traffic on it. You fast-forward to 2017, and there's meaningful interstate commerce along a river. How does it work? Does the agency say, oh, we ought to revisit the prior delegation? Are you compelled to revisit it? That's a good question. I am not aware of any formal, regular procedures whereby the agencies regularly reconsider the scope of a waterway's navigability. Here, this waterway at issue has been within the Michigan State scope of permitting authorities since 1984. Again, I would... No, right, but your adversary is saying, sure, and they're not directly challenging the 84 delegation, right? I don't know that they can. I don't think we have to answer that either. But what they're saying is that the circumstances have clearly changed, and you're dealing here with a non-delegable waterway, right, as if we measure it today. And it's just a different way of asking, I think, the question that Judge Hamilton is, so, you know, how does that get injected, you know, into the current controversy? Because is it kind of grandfathered? In other words, the agents say, well, if we thought about that in 84, we're done thinking about it. We don't have to think about it again. The agency, when somebody comes and considers this or the state is issuing a permit, simply says this is within the scope of the regulation setting forth the state's permitting authority. Again, my best answer is simply that if the tribe is concerned about the scope of Michigan's assumed authority, then the best way to seek review of that before the agencies is through an APA petition. But what is the APA, what would the, you said a 553 petition? Yes. What would a 553 petition ask the agency to do? Wouldn't you just respond to it by saying Michigan is the primary permitting authority in the first instance? Michigan's permitting authority is, it's set forth under regulation, that's... Right, what would the 553 petition say, in your view? The petition could say we're concerned about the scope of the state's permitting authority. Here is information. We request that the agency reconsider the regulation or the scope of the regulation. What regulation, the 84 delegation? No, it would be 233.70, which is the specific regulation that sets forth Michigan's responsibility to issue these permits. Okay, so... Would you rather litigate 1344G in federal court or state court? In federal court, Your Honor. But not here. Only after there's a 553 petition for rulemaking. That's correct. Here, for present purposes, the fact is that there was no petition. There was a letter, and the agencies responded, the court responded and said, we don't have authority to take back Michigan's permitting authority at this point. At that time, the court had no authority to issue permits because EPA had not even objected to the state permit at that time. So if we were in a different situation, yes, I would say that the scope of the permitting authority should be reviewed and the scope of a petition. But the tribe has not argued that they submitted a petition. It doesn't bear the hallmarks of a petition. Certainly, we do not require particular words or magic words to make it a petition. But some indication that the tribe seeks a change in the regulation setting forth the state's permitting authority would be proper. You know what's odd to me about that? I'm anxious to hear what Ms. Brimmer thinks about it. But the tribe's August 21, 2017 letter that resulted in the EPA's and the Corps' letters in response, that's not construed as such a petition? Because they're talking, I mean, you know the letter, they're talking about two things, right? The duty of trust to the tribe and they're talking about the changed circumstances with the non-delegable waterway. Why wouldn't the agency construe that as exactly what you're describing as possible here? The agency has construed the letter as a request for consultation, which EPA offered in its letter, and also as a request for an approved jurisdictional determination, which is a term of art specific to the Corps' determination that a particular area is an area that requires a Section 404 permit. The tribe also requested or explained that it was concerned specifically about the Aquila permit. That's not the type of request it would make if it were submitting a petition. A petition has to do with the broader regulation issue. Here they've made very clear... They would have to care, though, right? I'm sorry? The reason they care is because of the Aquila application, right? That's correct, but they have made clear that they are concerned specifically about the Aquila permit. They've explained throughout the litigation that this is an as-applied challenge specific to that permit. That's not the sort of relief that they would receive if they submitted a petition, and ultimately the agency needs to be on notice that somebody is petitioning for a change to the rule at issue. Here the agency responded because it has a responsibility to engage with its interested constituents. And as I've explained, EPA offered consultation. So if there was a 553 petition and it was successful, what relief could they obtain? They could have the agencies reconsider whether the waters assumed into Michigan's permitting authority are properly within the state's authority. So that would be kind of a reconsideration of the threshold question under the 84 delegation? That's correct. And what effect would that have on the mine permit? It would mean that the mine permit would need to be submitted to the Corps for review under Section 404. It would simply mean that the permitting process would proceed before the federal agencies. But ultimately here the agency's position is that they received a letter and they responded. And courts have made clear, particularly the D.C. Circuit, that the fact that an agency has responded to a letter does not amount to a final agency action where the letter hasn't reopened or changed the scope of any regulatory application. If I could, I would turn briefly to the NHPA argument. The plain text of Section 106 makes clear that NHPA consultation is required only with significant federal involvement through funding or the issuance of a license. Here the Aquila Mine is not funded by a federal agency and it is permitted by the state of Michigan. This court acknowledged in Old Town Neighborhood Association v. Kauffman that the primary question is whether there's federal funding or a federal license. The fact that an agency might have authority to issue a license doesn't matter if the license at issue is not federal because we hope that if there's significant federal involvement an NHPA consultation could affect the decision the agency makes going forward. But here that federal involvement simply isn't present. I'd also add that our interpretation of Section 106 and the degree of federal involvement required here is consistent with Subpart 4 of the definition of undertaking. The DDC decision in Indiana Coal Council provides a way to provide meaning to that subpart. There was 50% funding from the federal government and the agency at issue, the federal agency, had quite a robust role to ensure that the state permitting process proceeded as it should. There were mandatory investigations and the agency was required to inspect upon request. Those elements simply aren't present here where the state has created its own permitting program which triggers a host of other state statutes that are designed to protect the environment. Could you address the question about the EPA's withdrawal, discretion to withdraw its objections? Is it your position that the EPA could withdraw its objections for any reason whatsoever? That is our position. It's a decision committed to agency discretion. So that, well, the regulation, as I understand it, incorporates the 404B1 guidelines, right? Yes. Would the withdrawal have to be consistent with those guidelines? Ultimately, the regulations provide that if EPA decides to object, it needs to ground its objections in a concern that the guidelines aren't met or the Part 233 regulations or the Clean Water Act. But nothing provides a guidance in either 404 or the regulations for when EPA needs to pursue its objections or when it can withdraw them. This court explained in an American paper that because EPA's role is much more limited when a state is engaging in its own permitting process in the Clean Water Act context, it needs a degree of discretion to decide how and to what degree to be involved in that process. So suppose another senior government official got interested in this mine project and sent out a tweet saying, it's really important that this mine go forward and the EPA needs to get out of the way. EPA then withdraws its objections. Is that immune from judicial review? I would hope that there would be some review there. Why? And under what ground? I'm unsure. You're asking us to make that beyond review. I think in this context, it's different. I don't want to push the hypothetical, but here the agency did not withdraw its objections. It simply confirmed that they'd been satisfied. Nothing in Section 404 or the Part 233 regulations provide any information about when EPA should be satisfied that its objections have been adequately met. If the tribe believes that the permit the state has issued is not consistent with the applicable law, it's able to raise those substantive concerns in the state proceeding. But the court explained in American paper that there's no sense in having dual judicial review both in federal court and in state court. Ultimately, the focus is the state permit and the tribe can seek review of that permit in state court. If the court has no further questions, I'd rest on my briefs and cede my time to Akilah. Thank you. Thank you. Ms. Kreisler. Good morning, Your Honors. May it please the court. Ashley Kreisler on behalf of intervening Appalooey Akilah Resources. I'd like to begin by discussing the tribe's first cause of action, which is the agency's refusal, alleged refusal, to exercise permitting authority over the Menominee River. And the tribe argues that this is an as-applied challenge because it's asking the court to assume permitting authority over only this permit and is not challenging the entire assumption as it occurred in 1984. But there are two issues with the tribe's position in this regard. The first, as Ms. Ingalls stated, is that even with an as-applied challenge, there needs to be a final agency action to latch on to. And here, the letters that were sent by the court and the EPA do not qualify as final agency actions. They simply do not consummate the decision-making process and do not have the legal consequences that are required under the two-part test in Bennett. But even setting that aside, there's another issue with the tribe's position, and that is all the courts to have examined the issue of an as-applied challenge in the context of the Administrative Procedures Act  where an as-applied challenge can be raised. The first is when the court is reviewing an agency's adverse application of a rule to a particular challenger, such as in an enforcement action. But here, there was nothing that was applied to the tribe. The 1984 assumption was applied to Aquila, the permittee, but it was not applied to the tribe. The letters that the court and the EPA sent to the tribe didn't apply this to them. It simply stated, for informational purposes, this decision was made in 1984, decades ago, and we're pursuing, and Aquila can pursue the permit under the state permitting program as it is designed to work. The second exception is when, as we've discussed here before, the party petitions an agency for an amendment or a rescission to a rule, and then that decision is then appealed to a court. And that is an avenue for the tribe to pursue here. They could petition the agency. Would that be timely now? Yes, Your Honor, they could do that now. They could petition the agency and say, we believe that the 1984 assumption was incorrect, and the agency would then make a determination that could be appealed. However, that would not go back and affect Aquila's permit, as it's already been issued. It was issued in 2008 under the assumed program, which in Michigan is Part 303, and that assumes all of the requirements of the Section 404 program. I thought the permit was still being litigated. The permit currently is in a contested case proceeding. Aquila has received the wetlands permit under Section 3. So you're still now before the ALJ. Is that right? That's correct. In your view, could the state courts consider the question under 33 U.S.C. 1344G about whether the river is suitable for interstate or used in interstate commerce? Your Honor, as Ms. Ingalls stated, I think it would be difficult for a state court to make that decision, because the ultimate effect of a state court saying that the assumption was improper would be to force the EPA and the Corps then to assume permitting authority. Oh, sure. But if the 1984 delegation was erroneous as a matter of fact in law as applied to the Menominee River, what's wrong with that? I'm sorry, Your Honor. Could you rephrase that? If the 1984 delegation was wrong as a matter of law and fact to treat most of the Menominee River as subject to delegation, what remedy is available? Again, Your Honor, that is where the tribe could petition the agency. But you're saying it's too late for them to do that with respect to anything that would affect your permit. Sure. They've brought timely challenges to your permits. Why can't they raise that issue in the state courts? They may be able to, Your Honor. I believe that is an open question. But you're going to fight them on that, right? Yeah, Your Honor. Again, I believe it would be difficult. You don't want to have to relitigate the 1984 delegation, but they're entitled to litigate it somewhere, I would think. Absolutely. So where do you think they should do that? They should raise a petition with the agency. In a way that's too late to affect your permit. Yes, Your Honor. And the tribe has been involved in this process since at least 2010. They knew that this was going to be coming. Aquila met with them back in 2010 and told them, we're going to be seeking these types of permits, including a wetlands permit. The tribe could have raised it then if they were concerned about it. But instead, they waited seven more years and didn't raise this until after Aquila had already gone through two and a half years of this permitting process. Is it untimely as a legal matter, or just because in your view it would be terribly unfair? In other words, what source of law would make it untimely, a 553 petition this afternoon? Your Honor, I don't believe that a 553 petition would have retroactive effect on Aquila's permit. I believe that's why it would be untimely. Even if the permitting is not completely resolved because there's outstanding litigation in a state court right now? Yes, Your Honor. I believe that it would be something that would not have retroactive effect because Aquila has already gone through that permitting process under the state assumed program as it was in place when Aquila initially applied for the permit in 2015. But if the Michigan state courts were to find, through judicial review of the challenges to the permits, that this original delegation was contrary to federal law, presumably they could set aside the permits, right? If the state court ultimately had authority to do that, yes, I think they could. But the difficulty there would be— Aren't state courts supposed to enforce federal law? State courts can enforce federal law, Your Honor. The supremacy clause seems relevant here. Yes, Your Honor, it does. But the difficulty would be the effect of that would be that a state court would essentially be telling the Corps that they would have to take permitting authority over this. They would be determining the navigability of this river and would be telling the Corps— As a matter of federal law and subject to review in the highest federal court in the country. Certainly, Your Honor. What's wrong with that under our constitutional scheme? Certainly, Your Honor. And if that is an avenue that the tribe wishes to pursue, we can litigate that in the state court as well, but ultimately that wouldn't have an effect on their claim here, which is not a proper as-applied challenge and is not properly and timely before this court. Unless this court has any further questions. Thank you, Ms. Crisler. Ms. Brimmer. Thank you, Your Honor. I would like to begin my rebuttal points with pointing the court to the administrative law judge's order that we have attached and is part of the record here because on page three of that order, the administrative law judge is in fact citing to some Michigan cases that say that this may very well not be reviewable, that in fact Michigan courts are not going to look to the jurisdictional issue, which would reinforce the fact that this is the tribe's only forum to raise the issue. Where do we find that? Your Honor, I believe that was attached to our briefing to the court. Let me just find that momentarily. Yes, Your Honor, I confirmed. It is attached to the Menominee Indian Tribes opening brief to the court. Okay. And it is page three of that order. All I've got is Judge Griesbach's order attached to your brief. I've got a combined stipulated appendix. I'm not seeing it in the index to the appendix either. Your Honor, our copy of the brief reflects that it was attached to the brief. My apologies if for some reason that's not in your paper copy. Perhaps you could file a letter with the court directing it to us. I would absolutely do that. My apologies for that, that you do not have that in your copies. Thank you. But I would direct the court's attention to page three, and I will provide that in the letter so that the court is reminded of our citation. That does seem to suggest that the state courts are not going to review this issue. I would also like to address Ms. Engel's comments concerning the submission of a petition. In fact, both of the opposing counsel raised that. Sure, that's an avenue. We don't need to undo the whole delegation. We don't need to undo anything other than what is applicable here at this point in time. And, in fact, as the court has stated, that's still going to put the tribe in the untenable position of this issue. And, in fact, let's just talk about what we did here. The tribe submitted a letter that asked for the very things that are at issue here. And that letter clearly asked for more than consultation. If you review that letter, it says, this river is not properly delegated. Here is the evidence.  The federal government had received in response to a freedom of information request. So that ask was plainly before the agencies. The agency's letters back are plainly final agency action under all applicable federal law. They consummated the process in that they said, no, we're not taking this permit back. We are not going to exercise federal authority over it. This is delegated to the state of Michigan. And, in fact, the state ultimately then issued the permit once EPA withdrew its objections. That final consummation of the agency decision had an effect on the tribe. It had legal consequences. It changed the interests of the tribe. And I take issue with Ms. Chrysler's argument that somehow there's only final agency action when it would affect the permitted party. That is not the law with respect to the ability to challenge an agency action under the Administrative Procedure Act. In that event, then the tribe would be left with nothing, because the tribe is, of course, not the permitted party here and would not be the permitted party. That is not the law, and we would reject that argument as proper. I see that my time is up, and unless the court has questions, thank you. Thank you. Our thanks to all counsel. The case is taken under advisement.